IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Brennan Norden, | ) |
| | ) |
| Defendant. | ) |

Case No. A06-00038 CR (RRB)

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE -- ILLEGAL SEARCHES AND SEIZURES

Defendant, Brennan Norden, by and through counsel, Robert M. Herz, of the Law Offices of Robert M. Herz, P.C., hereby submits this memorandum in support of his motion to suppress evidence based on illegal searches and seizures.

## I. FACTS

### A. "Border Search" of Express Mail-Type Package

According to the discovery so far provided, on December 16, 2005 Special Agent (SA) Tavoliero of the US Immigration and Customs Enforcement (ICE) was informed that Customs and Border Protection (CBP) Inspectors seized and searched a package at the International Mail Facility at Seattle-Tacoma International Airport. The inspectors said the package contained 493 tablets that tested positive for a controlled substance, MDMA, commonly known as Ecstasy. The inspectors reported that the package was sent from Vancouver, Canada to "Brennan Nordan,[1] Kasilof, Alaska 99610."[2]

---

[1] The addressee's last name on the package is "Nordan," spelled with an "a". Mr. Norden's name is spelled with an "e".

From photographs provided in discovery, this package is an "XPRESSPOST" package in a white, sealed plastic envelope. The plastic envelope appears to be a standard envelope provided by a postal service for Express Mail-type packages. The package has a Post Canada USA Customs Declaration form saying the contents consist of a Board Game. The package appears to have been insured for $100. The declared value was $50. There is a USPS Delivery Confirmation sticker on the package, as well.

Based on these photographs, it appears that the package is equivalent to USPS Express Mail.

Only limited information concerning the opening, search, and seizure of this package has been provided.[3] The information provided is that the package was opened pursuant to a "Border Search" by CBP Inspectors on December 16, 2005. No information concerning any reasonable suspicion that may have prompted the search and seizure of the package has been provided.

### B. Package Shipped to Anchorage and Prepared for Controlled Delivery

Police reports provided in discovery state that the opened package with the original contents was shipped to the Anchorage ICE office by private carrier (DHL). The package was due to arrive on December 19, 2005. It did not arrive until December 22nd. The reports state that the delay was the fault of DHL.

Photographs provided show the DHL packaging and labeling. Photographs also show a large number of aqua-colored pills in a plastic bag.

---

[2] The package did not use a "General Delivery" address or any other mailing address. Mr. Norden has had and used for a substantial period of time a regular mailing address while living in Kasilof, Alaska.

[3] Mr. Norden's attorney requested additional information concerning this "Border Search" but has been informed that no additional discovery or information will be provided, or exists.

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

The reports state that on December 22, 2005 the pills were placed into evidence with the exception of one pill. Over the next few days, sham pills were obtained and placed in the original package along with one MDMA pill. Also, a plan for controlled delivery was made.

### C. Electronic Alerting Device Application

On December 27, 2005 an action was filed before Magistrate Judge John D. Roberts in United States District Court at Anchorage. This action is entitled: <u>Application of the United States Of America for an Order Authorizing the Installation and Monitoring of an Electronic Alerting Device As a Physical Surveillance Aid</u> (hereafter,"<u>Electronic Alerting Device Application</u>"). The case number is: No. A05-252 MJ (JDR).

Two documents from this action have been provided in discovery. The first document is an Application and Affidavit. This document was executed by SA Tavoliero before Magistrate Judge Roberts on December 27, 2005. The affidavit details SA Tavoliero experience and relates the course of the investigation generally as set out above.

The Application and Affidavit also states that several computer queries were made of law enforcement databases. These queries will be addressed in detail in the Argument section below.

Finally, the Application and Affidavit makes the following request:

> 15. I respectfully request an order for the installation and monitoring of an electronic alerting device to aid the officers in knowing when the suspect(s) open the package(s) to examine or remove the substance resembling 493 tablets of MDMA (Ecstasy) from the package. The electronic alerting device emits a radio signal when the package is opened. The electronic alerting device does not record, monitor, or transmit any form of communication. After the suspects(s) [sic, suspect(s)] open the package, I and officers of ICE, the Drug Enforcement Administration, and other officers plan to retrieve the package

5

and make appropriate applications with the court for further law enforcement action as deemed necessary at that time.

Based on this Application and Affidavit, Magistrate Judge Roberts signed the second document provided in discovery which is simply entitled "Order." This Order states that there is probable cause to believe that Mr. Norden was engaged in violations of drug trafficking and customs laws, that the package contains MDMA, and that an electronic alerting device will assist law enforcement officers in surveillance and determining "the moment at which the package is opened."

The final paragraph of the Order provides:

IT IS HEREBY ORDERED, on the basis of the aforementioned Application and Affidavit, and pursuant to Title 18 USC 3117(a), that members of [ICE], in conjunction with local law enforcement, may install, monitor and utilize an electronic alerting device within the above described package, either on public or private property, for a period of three (3) days, or whenever the investigation may end, whichever is sooner. This authorization is for either day or night.

This Order does not purport to be a search warrant. It was issued solely "pursuant to" 18 U.S.C. § 3117(a). Moreover, while the Order purports to give law enforcement officers authority to "install, monitor and utilize an electronic alerting device," the Order does not provide authority to enter and search residential premises.

### D. Delivery of the Package and Entry Into Mr. Norden's Residence

The police reports state that an electronic alerting device was installed in the package on December 27, 2005 after the Order was entered. The reports state that the alerting device was set to activate when the playing board of the board game was removed from the plastic tray inside the package. A USPS inspector delivered the package to the post office in Kasilof at about 10:01 a.m. on December 28, 2005. At 10:09 a.m. a post office employee

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

6

notified Mr. Norden by telephone that a parcel had arrived.[4] At 10:30 a.m. Mr. Norden arrived at the post office in a truck. He left shortly thereafter with the package. After stopping at a business for a few minutes, Mr. Norden went to his residence located at, according to the report, "21577 Evelyn Way."[5]

Mr. Norden arrived at the residence at 11:04 a.m.. At approximately 11:10 a.m. the electronic alerting device broadcast a signal indicating the package was opened.

At some point an "entry team" had been assembled outside the residence. This team consisted of SA Tavoliero, DEA agents, and Alaska State Troopers. A member of the entry team knocked on the door of Mr. Norden's residence and performed a "knock and announce." The report goes on to say that after approximately 15 to 30 seconds when no one appeared at the door "a forced entrance was made into the residence." The report states that the knock and announce process began at 11:12 a.m..

The report goes on to describe what was characterized as a "security sweep" of the residence. At 11:30 a.m. Mr. Norden was "removed from the residence and transported" by SA Tavoliero from Kasliof to the Alaska State Trooper Detachment in Soldotna, Alaska for "fingerprinting." The report states that the package was found in the basement of the residence in a bathroom. The package had been opened. The game pieces and the tray were

---

[4] The report states that Mr. Norden "made inquiries" at the post office "in regards to the delivery of his expected parcel." However, signed statements by the Kasilof postal employees state that Mr. Norden received a number of packages around Christmas 2005. The postal clerk's statement says that Mr. Norden told her that his uncle sent a package with no address and he was worried the post office would not know where to deliver it. The clerk also said that Mr. Norden inquired the day after Christmas "for additional parcels stating that he had spoken with relatives who had sent him Christmas gifts that he had not received." The clerk notes that Mr. Norden never mentioned the location from which any the parcels would have been sent. Therefore, it cannot be said that Mr. Norden inquired about the specific parcel at issue in the present case.

[5] The correct address of the residence is: "21577 Evelynmay," not "Evelyn Way."

7

near the toilet. The sham MDMA and the one pill were not found.

### E. The State Court Warrant

At 2:25 p.m. on December 28, 2005, Alaska Superior Court Judge Harold Brown issued Search Warrant No. 3KN-05-294 SW. The warrant was based on an affidavit by an Alaska State Trooper. The trooper, after reviewing his experience and training, in Paragraph 8, Page 3 states that that information below was from his "personal knowledge" and "from other law enforcement agents and officers and from specific sources as set forth."

The paragraphs are mis-numbered on Pages 3 and 4. Paragraphs 9 and 10 on Page 3 and Paragraphs 7 through 9 on Page 4 appear to be essentially the same as paragraphs in the affidavit supporting the Electronic Alerting Device Application that set out the initial seizure of the package and the subsequent investigation.

Starting with Paragraph 11 on Page 5, the affidavit sets out the facts relating to the controlled delivery. The second sentence of Paragraph 14 on Page 5 states as follows:

> At approximately 11:15 AM LEOs [Law Enforcement Officers] made entry into the home [Mr. Norden's residence] under the authority of the Federal Beeper Order, Federal Beeper Order Number A05-252MJ(JDR) to secure the residence, the monitoring equipment inside and the parcel.

Paragraph 15 states that law enforcement officers observed grow lights, dried marijuana, a live marijuana plant, and smoking pipes in the residence. The trooper also states that the game (Risk) box and game pieces were found in the downstairs basement bathroom, but the sham (candy) pills and the representative pill were not seen. Mr. Norden was alone in the residence.

As noted above, Mr. Norden was transported to the Alaska State Trooper Detachment in Soldotna. He was fingerprinted, questioned, and eventually released. He has

8

been charged with attempted possession with intent to distribute the MDMA pills in the package.

## II. ARGUMENT

### A. Summary of Argument

In a leading case on electronic beepers, <u>United States v. Karo</u>, 468 U.S. 705, 104 S.Ct. 3296 (1984), the United States Supreme Court held that, while the initial installation of the beeper did not violate the fourth amendment, "the monitoring of a beeper in a private residence" would violate the fourth amendment rights of the residents. *Id.*, 468 U.S. at 713, 104 S.Ct. at 3303. Therefore, under <u>Karo</u>, the monitoring of the electronic alerting device in Mr. Norden's residence and the subsequent forced entry into the residence would be illegal in the absence of a valid search warrant.

The Order was issued "pursuant to" 18 U.S.C. § 3117(a), but this statute merely allows monitoring of a "tracking device" outside the district in which the device was installed. On its face, and according to case law set out below, the statute itself does not authorize installation and monitoring of electronic alerting devices, much less entries into residences. Moreover, the Order issued by Magistrate Judge Roberts cannot qualify as an anticipatory search warrant allowing the forced entry into Mr. Norden's residence. Indeed, the order does not explicitly grant authority to enter any residence.

Mr. Norden will also argue that the initial "Border Search" should be supported by reasonable suspicion and that the affidavits for the various warrants and orders do not establish probable cause. The Border Search issue will be addressed first, and argument on the other issues will follow.

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

9

## B. The "Border Search" Should Be Supported by Reasonable Suspicion

In <u>United States v. Ramsey</u>, 431 U.S. 606, 97 S.Ct. 1972 (1977), the United States Supreme Court decided a case involving inspection of incoming "international letter-class mail without first obtaining a search warrant." <u>Id.</u>, 431 U.S. at 607, 97 S.Ct. at 1974. The Court noted that the eight envelopes in question were opened pursuant to 19 U.S.C. § 482 which allows customs officers to open letter-class international mail when there is "reasonable cause to suspect" merchandise is imported contrary to law. The Court found that the "reasonable cause to suspect" test was a practical test that imposed less stringent standards than those required by fourth amendment probable cause. <u>Id.</u>, 431 U.S. at 611-12, 97 S.Ct. at 1977.[6] The Court went on to hold that the fourth amendment did not require a search warrant and probable cause for inspection of incoming international mail during a "border search." <u>Ramsey</u> does not hold, however, that statutes requiring "reasonable cause" before opening mail during border searches do not apply.

The Ninth Circuit has addressed the issue of whether "reasonable cause" is required for border searches of incoming international mail. Mr. Norden must acknowledge that in the most recent case, <u>United States v. Ani</u>, 138 F.3d 390 (9th Cir. 1998), the court held that, even though statutes and regulations require "reasonable cause," the exclusionary rule did not apply in Ani's case. <u>Id.</u> at 393-94. However, in an earlier en banc case, <u>United States v. Taghizadeh</u>, 41 F.3d 1263 (9th Cir. 1994), the court noted that postal statutes and regulations did contain a reasonable cause requirement for letters. However, the <u>Taghizadeh</u> court found that the item in question was "clearly a package, not a letter," and held that the

---

[6] The Court cited the well-known reasonable suspicion case of <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868 (1968) when referring to the "reasonable cause" requirement of the postal statutes.

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

reasonable cause requirement did not need to be met. *Id.* at 1266.

Although this court is bound by <u>United States v. Ani</u>, Mr. Norden maintains that the sealed, express mail-type of international mailing which was opened and searched in the present case could not be searched absent reasonable cause. Mr. Norden contends that this mail was sealed letter class mail. (*See* <u>Taghizadeh</u>, 41 F.3d at 1266.) Given the importance of the "reasonable cause" standard to the Supreme Court's decision in <u>Ramsey</u>, reasonable suspicion or reasonable cause should be required for border searches of incoming sealed letter class mail.

### C. The Magistrate Judge's Order Did Not Justify Installation and Monitoring of the Electronic Alerting Device, And There Was No Justification for the Forced Entry and Search of Mr. Norden's Residence

#### 1. 18 U.S.C. § 3117 Does Not Authorize the Type of Order Entered

The <u>Electronic Alerting Device Application</u> Order described in the Facts section above purports to authorize the officers to "install, monitor and utilize an electronic alerting device within the above described package, either on public or private property." But this Order was entered "pursuant to" 18 U.S.C. § 3117. That statute does not authorize the entry of this type of order.

18 U.S.C. § 3117 is a short statute which provides as follows:

> (a) In general. If a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such an order may authorize the use of that device within the jurisdiction of the court, and outside that jurisdiction if the device is installed in that jurisdiction.
>
> (b) Definition. As used in this section, the term "tracking device" means an electronic or mechanical device which permits the tracking of the movement of a person or object.

This statute does not itself authorize "installation of a mobile tracking device." Instead, the

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

11

statute provides that if a court is already "empowered" to issue a search warrant authorizing installation, the warrant may allow use of the device outside the jurisdiction of the court. Therefore, an order entered "pursuant to" 18 U.S.C. § 3117 cannot authorize installation, monitoring, and use of a tracking device.

This statute was construed in a District of Columbia Circuit Court decision, United States v. Gbemisola, 225 F.3d 753 (D.C. Cir. 2000). In Gbemisola, customs agents found heroin in a Federal Express package being sent from Cambodia to the District of Colombia. The agents obtained a search warrant allowing the installation of tracking devices. But the warrant was issued in the District of Columbia, while the tracking devices were actually installed in Virginia. The defendant moved to suppress, relying on 18 U.S.C. § 3117. The circuit court first analyzed the statute as follows:

> In fact, the statute does not appear to authorize <u>installation</u> of a tracking device at all. On its face, the statute is addressed to a court already "empowered" by some other authority to issue an order for the installation of such a device. The statute merely permits such an otherwise-empowered court to authorize the <u>use</u> of that device both inside the jurisdiction and outside the jurisdiction if the installation is made inside.

Gbemisola, 225 F.3d at 757 n.2 (emphasis in original).

The Gbemisola court went on to note that the statute was enacted to address a problem with Fed. R. Crim. P. 41. Rule 41 previously provided that a magistrate was only able to issue a warrant within his or her district. Although the statute was passed to remedy this problem, the court noted that Rule 41 had been amended as well. The court went on to hold that the defendant's reliance on the statute for exclusion of evidence was misplaced. The statute, with its limited reach, did not "prohibit" use of a tracking device that did not conform

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

to the statute.[7]

The Order in the present case which was entered "pursuant to" 18 U.S.C. § 3117 cannot be used as a justification for installing, monitoring, and using the electronic alerting device.[8]

### 2. Could the Electronic Alerting Device Be Installed Without a Warrant?

In the Supreme Court case noted above, United States v. Karo, the Court held that the initial installation of a beeper did not violate the fourth amendment. But there are distinguishing factors in the present case. In Karo, the defendants ordered 50 gallons of ether from a business. The business owner consented to the installation of the beeper. The Court held the business owner's consent was sufficient to validate the installation of the beeper. Karo, 468 U.S. at 711, 104 S.Ct. at 3301. In the present case, the electronic alerting device was not installed with anyone's consent.

In addition, in another case cited in Karo, United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081 (1983), the court held that beepers installed on vehicles traveling on public highways do not violate the fourth amendment. However, the electronic alerting device in the present case was not designed to monitor movement in public areas. This device alerts law enforcement officers to what is essentially a private act which will most often take place in a residence: the opening of a package received in the mail.[9]

---

[7] The court in Gbemisola held that the installation of both the movement monitoring device and an electronic alerting device did not violate the fourth amendment. Gbemisola, 225 F.3d at 758-59.

[8] Mr. Norden also contends that the electronic alerting device would not fit within the definition of "tracking device" in 18 U.S.C. § 3117(b). The alerting device does not track the "movement" of a person or object.

[9] The defendant in Gbemisola opened the package while riding in a taxicab. The court held that this was a public place and Karo did not apply. *Id.*

13

Mr. Norden contends that non-consensual installation and monitoring of an electronic alerting device is sufficiently distinguishable from Karo and Knotts to require a warrant and probable cause under the fourth amendment.

### 3. Monitoring the Alerting Device and Entering Mr. Norden's Residence Violated the Fourth Amendment -- An Anticipatory Warrant Was Needed and Exigent Circumstances Did Not Exist

Most importantly, the Court in United States v. Karo did hold "the monitoring of a beeper in a private residence" did violate the fourth amendment rights of the residents in the absence of probable cause and a search warrant. *Id.*, 468 U.S. at 713, 104 S.Ct. at 3303.[10] As noted above, the Order entered in the Electronic Alerting Device Application case could not qualify as a search warrant authorizing such monitoring. Thus, the warrantless monitoring while the alerting device was in the residence and the eventual forced entry into the residence were illegal.

#### a. An Anticipatory Warrant Was Required

Even if the faults of the Order noted above could somehow be ignored, the Order would still fail to qualify as an anticipatory warrant that would be necessary to justify the entry.

The Order purports to authorize monitoring and use of the device in any "public or private" place. The Application and Affidavit also states in Paragraph 15 (quoted above) that SA Tavoliero and the law enforcement officers "plan[ned] to retrieve the package" after the alerting device was triggered. But the Order itself does not authorize any such action. The Order only authorizes installation, monitoring, and "utilization" of the device.

---

[10] Although the monitoring in public places under the facts of Karo did not require a warrant, the Court found that "warrants for the installation and monitoring of a beeper will obviously be desirable ... ". *Id.*, 468 U.S. at 713, 104 S.Ct. at 3303 n.3.

14

Thus, the Order does not endorse or authorize the agent's plans. In fact, the court, having been alerted to the plans and having not included authorization to enter premises in the Order, must be deemed to have specifically rejected any such authorization.

There is another major defect in the Order. Search warrants, to be valid must meet the particularity requirements of the fourth amendment. In United States v. Hotal, 143 F.3d 1223, 1227 (9th Cir. 1998), the Ninth Circuit noted that the purpose of the particularity requirement is to make "general searches impossible." In the present case, the Order does not specify a particular residence or place that can be searched. Nor did it specify with particularity what items the agents were authorized to search for and seize. Therefore, the Order fails the particularly requirement.

The Ninth Circuit, of course, has recognized an exception to the particularity requirement: anticipatory search warrants. But because of the importance of particularity, the anticipatory warrant exception has strict standards. An anticipatory warrant must be based on "clear, explicit, and narrow" conditions precedent. Hotal, 143 F.3d at 1226; see also United States v. Vesikuru, 314 F.3d 1116, 1119-20 (9th Cir. 2002). Another important requirement of an anticipatory warrant is that the warrant itself must specifically set out the conditions precedent and the warrant setting out the conditions precedent must be served at the time of the search. *Id.* The only exception to this requirement would be where the warrant sufficiently incorporates an affidavit that accompanied the warrant at the time of the search. Vesikuru, 314 F.3d at 1119-20.

In the present case, entry into the premises was not specifically authorized by the Order, much less based on any clear, explicit, and narrow condition precedent. Moreover, there is no indication that the Order and the Application and Affidavit were served during the

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

forced entry or that the Order incorporated the Affidavit and the affidavit accompanied the Order during the search.

It is abundantly clear that entry into Mr. Norden's residence could not be justified by the Order. The Order did not specifically permit entry into the residence and did not meet the requirements of an anticipatory warrant.

### b. Exigent Circumstances Cannot Justify the Search

In the present case, it is obvious that SA Tavoliero and the law enforcement officers relied on the Order entered in the Electronic Alerting Device Application case to justify the forced entry into Mr. Norden's residence. The government may argue that the entry could have been based on probable cause and exigent circumstances.

The leading case on this issue is Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022 (1971). The Sixth Circuit examined in United States v. Chambers, 395 F.3d 563 (6th Cir. 2005) the circumstances where warrantless searches and/or seizures are justified by exigent circumstances. In Chambers, the court noted that no amount of probable cause can justify a warrantless seizure where none of the "few specifically established and well-delineated exceptions" to the warrant requirement exist. Chambers, 395 F.3d at 565, quoting Coolidge, 403 U.S. at 454-55, 91 S.Ct. 2022. The court went on to note that "[w]here the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it" a warrant is required. Chambers, 395 F.3d at 565, quoting Coolidge, 403 U.S. at 470, 91 S.Ct. 2022. Based on these principles, the Chambers court found that "for a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves." Chambers, 395 F.3d at 566

16

In the present case, the law enforcement officers were not responding to an unanticipated exigency. They could have obtained an anticipatory warrant.[11] Also, in the discovery provided, the Kasilof postal workers stated that they knew exactly where Mr. Norden lived in the small community. The requirements for exigent circumstances cannot be met in the present case.

### D. The Subsequent State Court Warrant Was Fruit of the Earlier Illegal Searches and Seizures and the Affidavits for the Warrant and Order Did Not Establish Probable Cause

As noted above, the law enforcement officers obtained and Alaska State court warrant to search Mr. Norden's residence. This warrant was invalid because it was the fruit of the priory illegal entry noted above. This issue must be decided by applying the "independent source" doctrine.

In <u>United States v. Mulder</u>, 889 F.2d 239 (9th Cir. 1989) the Ninth Circuit held that, under the independent source doctrine, a search warrant must be considered tainted if "information obtained during [an illegal entry] was presented to the magistrate and affected [the magistrate's] judgment." *Id.* at 240 (quoting Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529 (1988). In the present case, there is no question that the information concerning the illegal monitoring and forced entry was presented to the judge considering a warrant. As set out above, Page 5 of the Alaska State Trooper's affidavit describes the monitoring of the alerting device in the premises, describes the forced entry, and states these activities were authorized by a Federal Beeper Order. It is obvious that these key events cannot help but have affected the judge's decision in issuing the state court warrant. Therefore, the state court warrant must be considered the fruit of the earlier illegal searches and seizures.

---

[11] Anticipatory warrants are available from Alaska state courts as well as federal courts. See <u>McGee v. State</u>, 77 P.2d 732 (Alaska App. 2003).

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

17

In addition, Mr. Norden would note that other portions of the state trooper's affidavit and SA Tavoliero's affidavit in support of the <u>Electronic Alerting Device Application</u> Order are objectionable and should not be considered in considering whether probable cause was established. Both affidavits list queries of law enforcement databases on December 16, 2005 by SA Tavoliero. Although some of these queries merely yielded identifying data concerning Mr. Norden, other queries of the "NADDIS" (Narcotics and Dangerous Drugs Information System) and "TECS" (Treasury Enforcement Communications System) contained information that, if believed, would indicate Mr. Norden was engaged in prior bad acts involving drugs. The affidavits do not say whether these alleged prior bad acts resulted in arrests or criminal convictions.[12] Although some detail is provided, the alleged bad acts are clearly hearsay.

In <u>United States v. Ornelas-Ledesma</u>, 16 F.3d 714 (7th Cir. 1994) the Seventh Circuit dealt with the issue of whether reasonable suspicion for a stop was justified in part by "hits" naming the individuals who were stopped as drug dealers in NADDIS. The court held that, because "the reliability of information stored in NADDIS is unknown," the information should be considered "no more reliable than that of an informant not known to be reliable." <u>Id.</u> at 718. Although the court reluctantly upheld the stop based on the coincidence of two NADDIS hits, it did not retreat from its finding that the information was essentially unreliable.

Therefore, in the present case, this court should discount the query information provided in the affidavits in any probable cause determination.

---

[12] To counsel's knowledge they did not result in any arrests or convictions nor is there any indication that Mr. Norden had any personal knowledge of any of the events indicated.

18

## III. CONCLUSION.

Below Mr. Norden will set out the remedies to which he is entitled based on the argument and authority he has set out above. These remedies are set out strictly in the alternative.

If this court finds that the Border Search must be supported by reasonable cause and that reasonable cause was lacking, all the subsequent investigation and evidence must be suppressed as fruit of the poisonous tree.

If this court finds that the Border Search justified, the question of the installation of the electronic alerting device must be considered. As set out above, Mr. Norden contends that the Order in the <u>Electronic Alerting Device Application</u> did not justify installation of the device. Moreover, notwithstanding <u>United States v. Karo</u>, Mr. Norden argues the warrantless installation of the device was illegal. If this court finds that these arguments are valid, all searches and seizures resulting from the installation must be suppressed. This would include any evidence concerning the monitoring of the device and any evidence directly or indirectly derived from the entry into Mr. Norden's residence.

If this court finds that the installation of the device was justified but the monitoring of the device in Mr. Norden's residence was illegal, any evidence concerning the monitoring of the device occurring in the residence and any evidence directly or indirectly derived from the entry into Mr. Norden's residence must be suppressed.

If this court finds that the monitoring of the device in Mr. Norden's residence was justified but the forced entry into Mr. Norden's residence was illegal, any evidence directly or indirectly derived from the entry into Mr. Norden's residence must be suppressed.

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Based on the foregoing argument and authority all evidence directly or indirectly derived from the illegal searches and seizures of the package or Mr. Norden's residence by law enforcement personnel must be suppressed.

DATED at Anchorage, Alaska, this 12th day of September 2006.

THE LAW OFFICES OF ROBERT HERZ, PC

s/ Robert M. Herz
425 G. Street, Suite 600
Anchorage, Alaska 99501
Phone 907-277-7171
Fax 907-277-0281
rmherz@gci.net
AK Bar No. 8706023

**CERTIFICATE OF SERVICE**
I hereby certify that on September 12, 2006, a copy of the foregoing Motion and Memorandum to Suppress Evidence was served electronically on Assistant United States Attorney s/ Robert Herz