Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| Brennan Norden, | ) ) ) |
| Defendant. | ) ) |

Case No. A06-00038 CR (RRB)

### MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE -- DEFENDANT'S STATEMENTS

Defendant, Brennan Norden, by and through counsel, Robert M. Herz, of the Law Offices of Robert M. Herz, P.C., hereby submits this memorandum in support of his motion to suppress statements he gave to law enforcement officers on December 28 and 29, 2005.

### I. FACTS

On December 28, 2005 Special Agent (SA) Tavoliero of the US Immigration and Customs Enforcement (ICE) accompanied by an "entry team" of Drug Enforcement Agency (DEA) agents and Alaska State Troopers made a forced entry into Mr. Norden's residence in Kasilof, Alaska.

According to SA Tavoliero's police report, the officers conducted a "security sweep" of the residence immediately after the "forced entry." In this process, Mr. Norden "was removed from the residence." Mr. Norden was restrained during this removal. After he was removed, Mr. Norden's detention continued. He was "transported" by a DEA Agent and SA Tavoliero to the Alaska State Trooper Detachment office in Soldotna, Alaska for

"fingerprinting." The distance from Kasilof to Soldotna is about 14 miles.

SA Tavoliero stated that Mr. Norden "made several inquiries" about his detention and the forced entry into his residence. SA Tavoliero reported that he made the following statements to Mr. Norden:

> This agent told NORDEN he was [the] intended recipient of an international shipment of MDMA. This agent told NORDEN he was being detained for fingerprinting [,] he was not under arrest and on completion of fingerprinting would be free to leave.

SA Tavoliero then gave Mr. Norden the following warnings:

> This agent told NORDEN that he had the right to remain silent, anything he said could be used against him in court and he could at any time contact an attorney.

Of course, these are not the complete warnings required by Miranda v. Arizona.[1]

SA Tavoliero asked Mr. Norden if he "understood," and according to SA Tavoliero, Mr. Norden "acknowledged in the affirmative." SA Tavoliero then brought up the subject of "cooperation." SA Tavoliero reported that he told Mr. Norden "if he chose to cooperate with the investigation it was by his own volition and any cooperation that he gave would be brought to the attention of the Assistant United States Attorney." Mr. Norden asked what he would get in return; SA Tavoliero stated he did not have authority to make promises.

According to SA Tavoliero's report Mr. Norden was detained starting at 11:30 a.m. The fingerprinting was not completed until 12:45 p.m. At that point, SA Tavoliero noted that Mr. Norden was "unrestrained" and "followed" SA Tavoliero into an interview room at the Trooper Detachment office. According to SA Tavoliero, the following exchange took place:

---

[1] 384 U.S 436, 86 S.Ct. 1602 (1966).

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

> This agent told NORDEN the circumstances indicated that he had arranged for the shipment of MDMA from Canada. This agent further told NORDEN that on his opening the package, finding that the MDMA was replaced with sham MDMA and hearing the knock and announce at his residence he flushed the contents in the toilet. NORDEN was told again that he was free to leave if he did not want talk. NORDEN remained in the interview room.

According to SA Tavoliero's report, Mr. Norden made incriminating statements. He denied flushing the contents down the toilet. But he did admit purchasing a board game from a company for one dollar. He also admitted seeing plastic bags of multicolored tablets and said he dropped them on the floor when he encountered the entry team.

Mr. Norden was not given transportation back to Kasilof after the interview. SA Tavoliero states that he allowed Mr. Norden to use his (SA Tavoliero's) cell phone to arrange transportation. The report states that at 1:15 p.m. Mr. Norden, at his request, was transported to the parking lot of the Safeway store in Soldotna.

## II. ARGUMENT

### A. The Miranda Warnings Were Incomplete and Invalid

According to SA Tavoliero's report, Mr. Norden was only told that he had a: "right to remain silent, anything he said could be used against him in court [,] and he could at any time contact an attorney." These are not the complete warnings required by the Miranda decision.

The Ninth Circuit in United States v. San Juan-Cruz[2] reviewed a case in which a Border Patrol agent first informed the defendant about his Administrative Rights. The Administrative Rights did not include assistance of counsel at government expense.

---

[2] 314 F.3d 384 (9th Cir. 2002).

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Therefore, the defendant initially was told he had the right to have an attorney present with him during questioning but "not at the [G]overnment's expense."[3] The agent immediately went on to give the defendant complete <u>Miranda</u> warnings. The Ninth Circuit held that the warnings were inadequate because the conflicting sets of warnings read in quick succession had to have been confusing to the defendant.

The court in <u>San Juan-Cruz</u> held the following standards apply to <u>Miranda</u> warnings:

> In order to be valid, a <u>Miranda</u> warning must convey <u>clearly</u> to the arrested party that he or she possesses the right to have an attorney present prior to and during questioning. The warning must also make clear that if the arrested party would like to retain an attorney but cannot afford one, the Government is obligated to appoint an attorney for free.[4]

In the present case, the warnings given to Mr. Norden did not include statements that advised him that he had the right to an attorney to be present during questioning and that if he could not afford an attorney, one would be appointed for him at Government expense.

In <u>San Juan-Cruz</u>, the court discussed the importance of complete, adequate <u>Miranda</u> warnings. The court suppressed the defendant's statements because the warnings were confusing under the circumstances. In the present case, where obviously incomplete and invalid warnings were given, there can be no question that Mr. Norden's statements must be suppressed if <u>Miranda</u> warnings were required.

---

[3] *Id.* at 387-88.

[4] *Id.* at 388 (emphasis in original, citations omitted).

5

### B. Mr. Norden Was Subjected to Custodial Interrogation; Miranda Warnings Were Required

#### 1. Custody

The Ninth Circuit held in United States v. Wauneka[5] that "custody" for Miranda purposes occurs when "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." The "pertinent factors" to be considered are:

> (1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual.

In the present case, there is no question that Mr. Norden was "detained." SA Tavoliero's states that he was "removed" from his residence, placed in an automobile[6] with two Government agents, and driven 14 miles to a police station in another town. He was informed he was being "detained." Although he was told he would be "free to leave" later, at the time the (invalid and incomplete) Miranda warnings were given, Mr. Norden was not free to leave. Therefore, Mr. Norden was plainly in custody for Miranda purposes.

Applying the pertinent factors set out above, Mr. Norden was not "summoned," he was forcibly detained and transported against his will to a police station 14 miles away. SA Tavoliero repeatedly confronted Mr. Norden with evidence of guilt. Even before the invalid warnings were given, Mr. Norden was told he was the intended recipient of an international MDMA shipment. SA Tavoliero went on to explain the benefits of "cooperation." After the fingerprinting, SA Tavoliero confronted Mr. Norden with detailed

---

[5] 770 F.2d 1434, 1438 (9th Cir. 1985).
[6] Presumably, the automobile was an official government law enforcement vehicle.

circumstances indicating he was guilty. The physical surroundings of the interrogation were initially in a law-enforcement vehicle and then at a police station. The total duration of the interrogation was approximately one hour and 45 minutes. Considerable pressure was applied to Mr. Norden. As noted above, he was repeatedly confronted with evidence indicating he was guilty and urged to cooperate.

Although Mr. Norden was told he would be free to leave at some point in the future, the pertinent factors unquestionably show that he was in custody for Miranda purposes.

### 3. Interrogation

In addition to custody, interrogation must occur before Miranda warnings are required. The Ninth Circuit in United States v. Padilla[7] noted that interrogation is defined as "express questioning and its functional equivalent."[8] In Padilla, an FBI agent arrested the defendant on felon-in-possession charges. The agent had previously met with the defendant, but the defendant refused to assist in an investigation the agent was conducting. After the arrest, the agent advised the defendant about the federal charges and told him he was being transported for an initial appearance before a federal magistrate. Then the agent said something to the effect that this was the defendant's "last chance to cooperate" in the investigation. The defendant made incriminating responses.

The Padilla court held that the "last chance" to cooperate comment was reasonably likely to evoke an incriminating response and was the functional equivalent of interrogation.

---

[7] 387 F.3d 1087 (9th Cir. 2004).

[8] *Id.* at 1093, citing Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682 (1980).

7

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

In the present case, Mr. Norden was told he was being detained because he was the "intended recipient of an international shipment of MDMA." He was then given incomplete and invalid <u>Miranda</u> warnings. At that point, SA Tavoliero solicited Mr. Norden's "cooperation," stating that any cooperation would be brought to the "attention of the Assistant United States Attorney." As was the case with the defendant in <u>Padilla</u>, Mr. Norden was subject to interrogation for <u>Miranda</u> purposes at or even before the point when his "cooperation" was solicited.

Because Mr. Norden was subject to custodial interrogation without complete and adequate <u>Miranda</u> warnings having been given, his statements and any evidence derived from the statements must be suppressed.

### C. The Statements Must Also Be Suppressed Because They Were Fruit of an Unlawful Detention

The exclusionary rule applies to statements obtained as a result of illegal searches and seizures. <u>Wong Sun v. United States</u>.[9] Admissions that are the "product" of an illegal detention or an illegal search or seizure must be suppressed as fruit of the poisonous tree. <u>New York v. Harris</u>.[10] Mr. Norden has filed a motion to suppress evidence derived directly or indirectly from the illegal searches and seizures that occurred from the beginning of this case. His statements to law enforcement officers are the product of these illegal searches and seizures and must be suppressed.

<u>Harris</u> was considered in <u>United States v. Crawford</u>,[11] a lengthy en banc decision by the Ninth Circuit. The defendant in <u>Crawford</u> was on parole. An FBI agent

---

[9] 371 U.S. 471, 83 S.Ct. 407 (1963).
[10] 495 U.S. 14, 110 S.Ct. 1640 (1990).
[11] 372 F.3d 1048 (9th Cir. 2004).

8

persuaded state officers to conduct a parole search. The FBI agent had probable cause to arrest the defendant on a bank robbery that occurred two years earlier. But the agent did not expect the parole search to yield any incriminating evidence relating to the earlier bank robbery. Instead, the parole search was merely a pretext to gain an opportunity speak with the defendant and try to get a confession. Although the defendant was detained during the search, he was not restrained. The FBI agent was able to engage the defendant in "chit chat" while the defendant sat on the couch waiting for the (fruitless) parole search to end.[12] After the search and detention ended, the defendant agreed to go to the local FBI office and speak further. He was told he was not in custody and was free to leave at any time. After the defendant confessed, he was allowed to leave.

The Crawford court held that the defendant's confession was not a product of either the detention or the search.[13] The present case is entirely distinguishable. Mr. Norden was actually seized during the search of his residence. He was restrained and transported, under detention, to the trooper station. As noted above, the interrogation began in the agents' vehicle. The search of the residence yielded incriminating evidence, and this evidence was used during the interrogation to obtain admissions from Mr. Norden. The interrogation commenced almost immediately after the illegal search and seizure of the residence. There was no attenuation and the causal connection between the illegal searches and seizures and the interrogation is clear in Mr. Norden's case.

Because Mr. Norden's statements were the product of illegal detention, searches, and seizures, statements he made to law enforcement officers must be suppressed as

---

[12] *Id.* at 1051.

[13] The court assumed for purposes of argument that the detention and search were illegal. *Id.* at 1054.

9

fruit of the poisonous tree.

### III. Conclusion

Based on the foregoing argument and authority, Mr. Norden's statements and all evidence directly or indirectly derived from them must be suppressed.

DATED at Anchorage, Alaska this 14th day of September 2006.

THE LAW OFFICES OF ROBERT HERZ, PC

s/ Robert M. Herz
425 G. Street, Suite 600
Anchorage, Alaska 99501
Phone 907-277-7171
Fax 907-277-0281
rmherz@gci.net
AK Bar No. 8706023

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

**CERTIFICATE OF SERVICE**
I hereby certify that on September 14, 2006, a copy of the foregoing Non-Opposed Motion/Memorandum was served electronically on Assistant United States Attorney s/ Robert Herz