NELSON P. COHEN
United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
david.nesbett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | No. 3:06-cr-00038-RRB |
| ) | |
| Plaintiff,     ) | **UNITED STATES'** |
| ) | **OPPOSITION TO** |
| vs.     ) | **DEFENDANT'S MOTIONS** |
| ) | **TO SUPPRESS** |
| BRENNAN NORDEN,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

I.  INTRODUCTION

The defendant, Brennan Norden, moves to suppress the statements he gave to law enforcement officers. Docket No. 31. The defendant also moves to

suppress evidence seized during a search of an express mail package and his residence. Docket No. 26. The statements made to officers should not be suppressed because the defendant was not in custody and he made the statements after he received warnings regarding the use against him of any statements he might make and he was told he could contact an attorney at any time. The seizure of the express mail package was seized pursuant to a valid border search. The warrantless search of Norden's house was valid in light of the exigent circumstances, the threat of evidence destruction, that existed. Finally, the state search warrant contained sufficient independent source to establish probable cause so that even if information obtained from the protective sweep were omitted, there would still be a basis to establish probable cause.

II.   FACTS

A package containing 493 tablets of Ecstasy ("MDMA" a scheduled II controlled substance) was found concealed in a Risk board game being shipped from an unspecified sender in Canada to Brennan Nordan of Kasilof, Alaska. The package was found by Customs and Border Protection ("CBP") Inspectors at the International Mail Facility at the Seattle, Tacoma International Airport. Alaska law enforcement officers were notified on December 16, 2005, and the name Brennan Nordan was queried in several law enforcement databases with no results,

but then Brennan Nord<u>e</u>n, with an 'e', was queried and the following results were revealed: 1) on or about October 1, 2004, a package containing one pound of hallucinogenic mushrooms, a quarter pound of marijuana, and three vials of hash oil was intercepted addressed to Brennan Norden, Kasilof, Alaska; 2) on or about March 23, 1999, a package containing concealed quantities of Valium and Diazepam was intercepted that was addressed to Brennan Norden in Missoula, Montana.

A sham package of 493 Ecstacy tablets (with one real tablet) was prepared and an Order was obtained that allowed for the installation and monitoring of an electronic device to let officers know when the package was opened. Brennan Norden picked up the package at 10:35 a.m. on December 28, 2005, at the Kasilof post office and drove to his residence in Kasilof, Alaska. At 11:15 a.m. the beeper indicated that the package had been opened. Law enforcement officers ("LEO") knocked and announced their presence. When no one responded, they entered the home to do a safety sweep and secure the residence and evidence.

During the safety sweep of the house the package was seen in the downstairs bathroom near the toilet with the Risk game pieces outside the box, but none of the pills was located. Also observed during the sweep of the house were both a live marijuana plant and dried marijuana along with grow lights and

smoking pipes.  Norden was the sole occupant of the residence at the time of entry.

LEOs took Brennan Norden to be finger printed.  LEOs also sought a state search warrant to re-enter the home to search for the 493 pills and the other drug items viewed during the protective sweep.  The search warrant was obtained and executed.  The pills were not found.

Brennan Norden made several inquiries of the LEOs about the circumstances of the entry into his home and his detention.  Brennan Norden was told that he was the intended recipient for a package of Ecstacy and that he was being taken in to be fingerprinted.  He was told that he would be free to leave once the fingerprinting was completed.  He was also told that he had the right to remain silent and that anything he said could be used against him in court and he was also told he could contact an attorney at any time.  Norden was asked if he understood and Norden replied in the affirmative.  Norden was then told that if he cooperated with the investigation it would be brought to the attention of the prosecutor.  The fingerprinting was completed at 12:45 p.m., within an hour and a half of when the beeper indicated that the package had been opened.

In an interview room, with the door open and un-restrained, Norden was told by Agent Guy Tavoliero that it appeared that he had arranged for the mailing of Ecstacy to himself and had flushed the pills when the LEOs arrived on site.

Norden was told that he was free to leave if he did not want to talk. Norden then stated that he did not flush the pills and that he bought the Risk game for $1 from a company. Norden then admitted that he had seen the pills and dropped them on the floor when the LEOs knocked. Norden also admitted having taken Ecstacy previously and said he knew where the Ecstacy pills were pressed and manufactured and would reveal that information if he were exonerated.[1]

Norden was told by Agent Tavoliero that the agent could not negotiate information from him. Norden then stated that he wanted to talk to his family attorney. No further questions were asked of Norden regarding his involvement in the illegal activity. Norden asked for, and was provided the use of, the agent's cell phone to arrange for transportation. At Norden's request, he was driven to the Safeway in Soldotna and dropped off.

### III.   THE DEFENDANT'S MOTIONS TO SUPPRESS

   1.   Introduction

Norden argues that statements he made should be suppressed because they were obtained in violation of the Fifth Amendment. Norden also argues that the evidence seized from an express mail package and his home must be suppressed

---

[1] Norden also stated that there was no market for Ecstacy in the area and asked if he looked like a person that attended raves.

because they were obtained in violation of the Fourth Amendment. Because the defendant was not in custody when he made the statements, and because he was warned about making any statements, they were not obtained in violation of the Fifth Amendment. Regarding the evidence seized, the express mail package was seized at the border and was thus seized pursuant to a valid border search. The order allowing installation of a monitoring device was valid. The search of his house was valid because of the exigent circumstances from possible evidence destruction that was present when the monitoring device indicated that the package had been opened. Consequently, the evidence was not obtained in violation of the Fourth Amendment. The subsequent search warrant is valid even without the information observed during the safety sweep and thus is valid based on an independent source for establishing probable cause.

    1.    <u>Argument</u>

        A.    <u>The Evidence was not Gathered in Violation of the Fourth Amendment</u>

First, the search and seizure of the express mail package van did not violate the Fourth Amendment. The United States Supreme Court has held that the government may search mail entering the United States because of its "longstanding right . . . to protect itself by stopping and examining persons and

property entering the country." United States v. Ramsey, 431 U.S. 606, 616 (1977). "Searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border." Id. at 616. "Accordingly, there can be no constitutional violation for the border search of incoming international mail by a customs inspector." United States v. Ani, 138 F.3d 390, 392 (9th Cir. 1998).

Second, the order for installing the monitoring device in the package was valid. Norden argues that 18 U.S.C. § 3117 does not authorize the type of order entered. However, no warrant or court order is needed to place a tracking device in a package containing contraband, stolen property or the like because the individual possessing such an item has no legitimate expectation of privacy in items that the individual has no right to possess at all. United States v. Gbemisola, 225 F.3d 753, 759 (D.C. Cir. 2000). Nevertheless, here the officers obtained a court order even when no order was necessary. Even if held to a higher standard, the particularity requirement of the Fourth Amendment is satisfied if the affidavit includes a description of the object into which the monitoring device is to be placed, the circumstances and facts that caused the agents to request the use of the tracking device, and the length of time that the tracking device will be installed and monitored. United States v. Karo, 468 U.S. 705, 718 (1984). Here, the court order found probable cause to believe that an electronic alerting device installed in

the package would assist officers in conducting surveillance of the package and in determining the moment at which the package was opened. Based on the Affidavit, which included the description of the package and the facts that caused the agents to request the device, *in addition* to 18 U.S.C. § 3117, the court authorized the installation of the device. The installation of the alerting device was valid.[2]

Third, the safety sweep of the residence was justified based on exigent circumstances. "Even without a warrant, police may sometimes enter a home to secure it when exigent circumstances exist. '[E]xigent circumstances are present when a reasonable person [would] believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" United States v. Alaimalo, 313 F.3d 1188, 1192-1193 (9th Cir. 2002) (quoting Bailey v. Newland, 263 F.3d 1022, 1033 (9th Cir. 2001). The reasonableness of the warrantless entry is evaluated in view of the totality of the circumstances seen from the perspective of the police officers at the time of the entry. United States v. George, 883 F.2d 1407, 1412 (9th Cir. 1989).

---

    [2] There is no difference legally between an "alerting" device and a "tracking" device under these circumstance.

Here, the order for authorization of the monitoring device included a finding that there was probable cause to believe that Norden was engaged in violations of felony drug laws. Once the monitoring device signaled that the package had been opened after Norden picked up the package and took it back to his home, exigent circumstances existed because of the fear that Norden might destroy the evidence; which in fact is what appears to have happened.

The LEOs reasonably believed that they could not have obtained an anticipatory search warrant because they did not know the destination of the package after Norden retrieved it from the post office. <u>United States v. Ruddell</u>, 71 F.3d 331, 333 (9th Cir. 1995) (affidavit must demonstrate that the property is "on a sure course to the destination targeted for the search"). They also reasonably delayed getting a search warrant until someone opened the package because they did not know where the package would be opened and whether suspects, other than Norden, would open it. For all these reasons, the warrantless search of the house was reasonable and was justified in light of the potential for evidence destruction.

Finally, the search warrant that was obtained later was valid even without the information obtained from the protective sweep. Under the independent source doctrine, the evidence is admissible if the government can show an

"independent source" for the LEO's decision to seek the search warrant and for the magistrate's decision to issue it. See Murray v. United States, 487 U.S. 533, 542 (1988). A finding of probable cause already existed as to Norden's violations of felony drug laws as contained in the Order for the monitoring device. Once the package was opened at his residence, absent the exigent circumstances, the LEO's could have applied for and obtained a search warrant as the information amounted to probable cause. See United States v. Salas, 879, F.2d 530, 537–38 (9th Cir. 1989).

    B.    The Statements Made by the Defendant Were Not Obtained in Violation of the Fifth Amendment

First, the defendant was not in custody when he was questioned. To determine whether an individual is in custody, a court decides, after examining all of the circumstances surrounding the interrogation, whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. United States v. Kim, 292 F.3d 969, 973 (9th Cir. 2002). The following factors are among those likely to be relevant to deciding whether the officer has established a setting from which a reasonable person would believe that he or she was not free to leave: (1) the language used to summon the defendant; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical

surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the defendant. Id. at 974.

Norden was told he was free to leave as soon as the fingerprinting was complete. When the fingerprinting was complete, he was again told he was free to leave. The interrogation of Norden did not start until after his fingerprinting was complete and he was told he was free to leave. During the interrogation, he was un-restrained, and in an interview room with the door open. When he said he wanted to speak with a family attorney, the questioning regarding the illegal activity stopped. Norden requested the use of the Agent's cell phone and he made arrangements for a ride and was given a ride to the Safeway to meet his ride. The Ninth Circuit has said that "questioning does not amount to custodial interrogation where, as here, the suspect is told that he is not under arrest and is free to leave, and he does in fact leave without hindrance." United States v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004). What takes place prior to the interrogation does not transform the interrogation into a custodial situation. Id. When reviewing the totality of the circumstances, it is apparent that the defendant was not in custody for Miranda purposes and, therefore, the Agent was not required to give him his Miranda warnings.

Even if the interrogation were considered custodial, Norden was sufficiently

warned to satisfy the Miranda requirements. "What Miranda requires 'is meaningful advice to the unlettered and unlearned in language which they can comprehend on which they can knowingly act.'" United States v. San Juan-Cruz, 314 F.3d 384, 387(9th Cir. 2002). Here, Norden was warned, prior to the statements he made, that he had the right to remain silent and that anything he said could be used against him and that he could contact an attorney at any time. Norden was asked if he understood this and he replied in the affirmative. After he made several statements and he discussed cooperation with the Agent, Norden said he would have to talk to his family attorney. At that time the questioning regarding the illegal activity ceased.

Norden understood his rights as they were provided to him. He said he understood and in fact decided to seek out advice from his family attorney. This is different than in United States v. San Juan-Cruz, where an illegal immigrant was first told he did not have the right to a government paid attorney and then later he was told he did have a right to a government paid attorney. 314 F.3d at 387–88. The defendant alleged that he was confused regarding whether he could have a government appointed attorney based on these conflicting warnings. The Ninth Circuit held that this confusion was justified and thus the warnings the defendant received were insufficient. Id. at 388. In this case, there were no such conflicting

warnings, nor does Norden claim to have been confused, in fact he said he understood. And, tellingly, Norden exercised his right and said he would contact his family attorney.

IV. <u>CONCLUSION</u>

Based on the foregoing, therefore, the items seized, and the statements made, should not be suppressed. The defendant's motions should be denied.

RESPECTFULLY SUBMITTED this <u>6th</u> day of October 2006, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney


s/ David Nesbett
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500
email: david.nesbett@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on October 6, 2006 a copy
of the foregoing was served electronically on:

Robert Herz


s/David Nesbett