**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>BRENNAN NORDEN,<br><br>　　　　　　Defendant. | 3-06-cr-00038-RRB-JDR<br><br>**<u>FINAL<br>RECOMMENDATION<br>REGARDING<br>MOTIONS TO SUPPRESS</u>**<br><br>(Docket Nos. 26 & 31) |

　　　　The parties have timely filed objections to the Recommendation addressing defendant Brennan Norden's motions to suppress. *See* United States' objections to Report and Recommendation, Docket No. 54, and defendant's objections to Recommendation, Docket No. 58. Neither party submitted any response to the other party's objections. Upon due consideration of the objections the magistrate judge continues to recommend that Norden's motion to suppress

evidence from his residence, Docket No. 26 be DENIED and that the motion to suppress statements made by him to law enforcement officers on December 28, 2005, Docket No. 31, be GRANTED.  In order to assist the court the below comments are made addressing the objections.

Norden argues that the December 2005 Order issued in Cause No. A05-252MJ authorizing the placement and monitoring of an electronic alerting device in a package led to an illegal search of his residence.  He claims that officers' monitoring of the alerting device while it was inside the residence violated the Fourth Amendment.  He relies upon <u>United States v. Karo</u>, 468 U.S. 705, 104 S.Ct. 3296 (1984).

<u>Karo</u> has been addressed in the recommendation.  The case is distinguishable by its facts.  The government had obtained a court order authorizing the installation and monitoring of a beeper in a can of ether.  Relying on the beeper monitor, agents determined that the can with the beeper was inside a house and obtained a warrant to search the house based in part on information derived through the use of the beeper. The district court suppressed the seized evidence on grounds that the initial warrant to install the beeper was invalid and that the seizure was tainted by the unauthorized installation and monitoring of the beeper. On appeal, the government did not challenge the invalidation of the initial warrant. The Tenth Circuit affirmed for the most part, but the Supreme Court reversed.

In <u>Karo</u> the Supreme Court held that under the facts of that case there was no Fourth Amendment interest of Karo infringed by the installation of the beeper in a can of ether. The transfer of the beeper laden can to Karo was not a search or a seizure since it conveyed no information that Karo desired to keep private and did not interfere with his possessory interests in any meaningful way. The issue pertinent to this case was whether the monitoring of the beeper in a private residence violated the Fourth Amendment rights of those who have a justifiable interest in the privacy of their residence. The Court framed the issue as "whether monitoring of a beeper falls within the ambit of the Fourth Amendment when it reveals information that could not have been obtained through visual surveillance." 104 S.Ct. at 3299.

The general rule is that any search of a house by the police should be conducted pursuant to a warrant. In <u>Karo</u> the initial warrant was invalidated because it contained misleading statements in the affidavit not because it lacked probable cause. Thus, the government argued that a warrant was not required anyway because it was impracticable to obtain a warrant. *See* 104 S.Ct. 3305, n.5. As it turned out the government prevailed without needing a warrant authorizing installation. *Id.* The Supreme Court found sufficient untainted evidence in the warrant affidavit to establish probable cause without the need for the officers to rely on the beeper to locate the ether in the house sought to be searched.

Karo teaches that when the beeper is activated to track the movements of a container then privacy interests are implicated. In both Karo and this case the agents already knew the contents of the package. The beeper simply transmitted information about the package's location. In the case at bar, the agents had a valid warrant for installing and monitoring a beeper in Norden's package. The agents observed Norden take the package into the residence. At that point the agents had probable cause to search Norden's residence.[1]

The October 2005 Order allowed the beeper to be monitored for a limited time after Norden took possession and control of the package. Clearly, the Order did not authorize an entry into the residence to search it. The agents did not enter Norden's residence under the color of any warrant; their entry was predicated upon the presence of exigent circumstances once the beeper alerted the officers to the fact that the package had probably been opened inside the residence.

Norden argues that the district court lacked authority to issue an order allowing the installation and monitoring of the electronic alerting device. He argues specifically that 18 U.S.C. § 3117 does not authorize the entry of such an order. In

---

[1] Norden does not disagree with such observation. Rather, he argues that the agents should have applied earlier for an anticipatory search warrant with the expectation that after the package was delivered at the post office by a postal authority to Norden he would probably take it to his own residence before opening it. The agents lacked sufficient time to apply for a warrant without risking significant likelihood of the disappearance of the evidence.

<u>United States v. Gbemisola</u>, 225 F.3d 753 (D.C. Cir. 2000) the Federal Circuit Court noted that on its face § 3117 provides a basis for authorizing the use of a mobile tracking device. *Id.* at 758. The court examined the legislative history of § 3117 and stated that Congress made clear that under <u>United States v. Karo</u>, <u>supra</u> and <u>United States v. Knotts</u>, 460 U.S. 276, 103 S.Ct. 1081 (1983), "warrants are not always required for either the installation or use of a mobile tracking device(s)." *Id.* citing H.R. Rep No. 99-647, at 60 (1986). <u>Knotts</u> held the warrantless "installation of a beeper on a container to follow on a public roadway does not violate the Fourth Amendment".

        The package mailed from Canada to the United States and delivered to Norden made applicable customs regulations which authorized an inspection of the package by customs officials. Once the inspection revealed the presence of contraband there was no longer any privacy interest in protecting the contents of the package based on a claim of privacy. After a controlled delivery was made, Norden was surveilled in receipt of the package. <u>Gbemisola</u> holds that installing a tracking device does not require any additional intrusion into anyone's reasonable expectation of privacy. Without such an intrusion there is no Fourth Amendment violation. 225 F.3d at 758. The Circuit Court further explained that the Supreme Court held in <u>Karo</u> that no warrant was required for monitoring the device during the time it was en route to the house in a vehicle on a public road. As in <u>Gbemisola</u>, the

location of the tracking device added nothing to what the agents could not observe with their own eyes as Norden proceeded to his residence.

Norden states that the Valium and Diazepam shipment, referenced in the Recommendation at page 3, related to a border search in Texas when he lived in Mazula, Montana. Apparently that shipment did not come from Canada and the magistrate judge accepts this correction to the factual narrative.

### Government's Objections

The government has provided comments addressing the Recommendation for granting Norden's motion to suppress statements made by him to law enforcement officers on December 28, 2005. The government argues that Norden was not in custody at the time those statements were made contrary to the findings in the Recommendation. The government agrees that Norden was in custody for purposes of Miranda when he was transported by the agents to the police station. They argue that after he was fingerprinted and the handcuffs removed he was no longer in custody.

The Recommendation concluded that the advisement of Miranda warnings given to Norden was inadequate. In its objections the government ignores that conclusion of law instead arguing that Norden was not legally in custody at the time of the interview at the police station.

It is clear that Norden had no choice whether to remain at his residence. The agents required him to accompany them to the DEA office for fingerprinting. *See* Transcript of Suppression Hearing held October 30, 2006, p.66 (testimony of Tavoliero). The discussion with Norden about whether he would cooperate with the agents took place before Norden was fingerprinted. Tr. 68. The government relies upon Agent Tavoliero telling Norden that after he was fingerprinted he would be free to leave. Norden was told he was being "detained." Tr. 23. During this "detention" he was clearly interrogated. Norden testified at the suppression hearing that after he was fingerprinted he asked to leave. He stated that he tried to leave through the door that he had entered but that the door had a metal plate with a bolt lock and no door handle. Tr. 124. At this time Agent Tavoliero was walking behind him and commented that they would need to get somebody to open the door for them. Tr. 124. Instead of opening the door so that Norden could leave (even though he had no transportation of his own) Norden was escorted to an interview room where he sat for about twenty minutes after which Agent Tolaviero entered the interview room and interrogated him.

Under the totality of the circumstances presented in the evidence a reasonable person in Norden's shoes would have concluded that he was still being detained by the agents for further questioning. The government has not met its

burden of proving by a preponderance of the evidence that Norden was not in custody for purposes of Miranda.

Accordingly, defendant's **Motion to Suppress evidence obtained from his residence, Docket No. 26, should be DENIED.** The **Motion to Suppress statements made by him to law enforcement officers on December 28, 2006, Docket No. 31, should be GRANTED**.

The suppression motions shall now be brought to the attention of the assigned district judge for his determination.

DATED this 14th day of December, 2006, at Anchorage, Alaska.

      /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge